NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| CONTROL SCREENING, LLC<br><br>                    Plaintiff,<br><br>v.<br><br>INTEGRATED TRADE SYSTEMS, INC., and<br>PEMEX-PETROQUIMICA,<br><br>                    Defendants. | Civ. Action No. 10-499 (KSH)<br><br><br><br>**OPINION** |

**KATHARINE S. HAYDEN, U.S.D.J.**

      Now before the Court are two closely related motions.  First, plaintiff Control Screening moves to vacate the order entered by Magistrate Judge Patty Shwartz transferring this action to the Southern District of Texas.  [D.E. 36.]  In addition, defendant PEMEX-Petroquímica moves to dismiss the claims against it on numerous grounds or, in the alternative, to transfer the action.  [D.E. 47.]  The motions arise out of an order for limited discovery on the jurisdictional and venue issues presented by the motions.  [D.E. 16.]

**I. Facts**

      **A. The Subject of the Litigation**

      This litigation arises from a purported contract between the plaintiff, Control Screening, LLC, and defendants Integrated Trade Systems, Inc. ("ITS"), and PEMEX-Petroquímica.  Control Screening is a New Jersey company that manufactures x-ray screening devices.  (Second Amended Compl. ("SAC") ¶ 1.)  It alleges that it entered into a contract to provide x-ray scanners to ITS and PEMEX, and that ITS and PEMEX breached the contract.  (SAC ¶¶ 8, 11,

15.) Through a series of emails and letters, ITS, as the buying agent for PEMEX, and Control Screening negotiated the terms of an anticipated agreement. (SAC ¶ 3–4.) Negotiations began in June 2009 and collapsed in December of the same year due to a disagreement over the terms of payment. ITS's original proposed payment terms were "net 30 days," which meant the buyer would "pay [the] seller in full on or before the 30th calendar day . . . of when the goods were dispatched by the seller or the services were fully provided." (Contreras Certif. ¶ 17.) Control Screening, however, insisted on a letter of credit, something that PEMEX, as an instrumentality of the Mexican government, could not agree to. (Letter of Aug. 27, 2009, attached to Contreras Certif. as Ex. F; Emails of Oct. 28, 2009, attached to Talan Decl. as Ex. C.) As a concession, ITS altered its proposed terms to "net 20 days," but Control Screening rejected that option because it "does not ship outside of the United States without payment." (Emails of Nov. 25, 2009, attached to Contreras Certif. as Ex. J.)

On December 21, 2009, ITS emailed Gregory Schaefer, Control Screening's representative in the negotiations, to explain why PEMEX would not use a letter of credit, offer assurances that Control Screening would receive payment, and ask Control Screening to reconsider its position on the terms of payment and accept the purchase orders ITS had sent on behalf of PEMEX, which included ITS's revised payment terms. (Contreras Certif. ¶ 14; Email of Dec. 21, 2009, attached to Contreras Certif. as Ex. N; Purchase Orders, attached to Contreras Certif. as Ex. H.) The next day, however, ITS sent Schaefer a letter indicating that because Control Screening had not accepted the purchase orders, ITS was canceling them. (Letter of Dec. 22, 2009, attached to Contreras Certif. as Ex. L.) Schaefer responded via email on December 23, 2009, stating that there was a "fundamental misunderstanding" and that PEMEX's purchase orders constituted an acceptance of Control Screening's August 27, 2009, proposal and

offer and created a binding contract under the Uniform Commercial Code. (Emails of Dec. 23–24, 2009, attached to Contreras Certif. as Ex. O.) Schaefer warned ITS that if it did not reconsider its cancellation, it would be in breach of the contract. (*Id.*) In the SAC, Control Screening alleges that, in reliance on the contract, it built scanner parts in New Jersey and sent those parts, as well as New Jersey-based personnel, to the Philippines to manufacture the scanners. (SAC ¶¶ 9–10.)

On January 28, 2010, Schaefer sent ITS an email expressing Control Screening's view that a contract existed, and ITS replied by stating its view to the contrary. (Emails of Jan. 28, 2010, attached to Contreras Certif. as Ex. P.) The same day, Control Screening filed its original complaint alleging breach of contract. [D.E. 1.]

### B. Facts Integral to the Current Motions

As noted above, Control Screening is a New Jersey company that has its principal place of business in New Jersey and has factories in New Jersey and the Philippines. (SAC ¶¶ 1, 8, 10.) ITS is a Delaware corporation with its principal place of business in Texas. (*Id.* ¶ 2.) It is a wholly-owned subsidiary of Petróleos Mexicanos, the Mexican national oil company, and was created to provide "procurement services for Petróleos Mexicanos and its subsidiaries." (Cano Certif., attached to Rohrberger Decl. as Ex. 1, ¶ 3.) It serves as the American agent and buying office for PEMEX, which is another wholly-owned subsidiary of Petróleos Mexicanos, and which is organized under Mexican law with its principal place of business in Coatzacoalcos, Mexico. (SAC ¶ 3–4; Linares Certif., attached to PEMEX Mot. to Dismiss, ¶ 2.) ITS asserts that although it has obtained supplies in New Jersey for Petróleos Mexicanos, it has never done so for PEMEX. (Cano Certif. ¶ 11.) Also, ITS asserts that it has no connections to New Jersey because it does not have a license to do business there, does not conduct or solicit business there,

3

does not have a telephone listing or bank account there, and does not send its employees there. (*Id.* ¶¶ 5–9.)  PEMEX makes the same assertions.  (Linares Certif. ¶¶ 8–12.)  In addition, ITS's employees, files, documents, and records are located in Houston, Texas, and PEMEX's employees, files, documents, and records are located in Mexico, except for those files and records ITS maintains for PEMEX in Houston.  (Cano Certif. ¶ 10; Linares Certif. ¶ 13.)

The set of events underlying this action began in June 2009, when ITS sent an email on behalf of PEMEX to "sales@autoclearUS.com" seeking a "Request for Quotation for [plaintiff's] AUTOCLEAR 6040 X-Ray Scanner."  (Contreras Certif., attached to Rohrberger Decl. as Ex. 2, ¶¶ 2, 4; Email of June 4, 2009, attached to Contreras Certif. as Ex. A.)  Control Screening customer service representative Rosa Maria Garcia replied via email on June 5, 2009, informing ITS that its request had been forwarded to Schaefer, Control Screening's regional sales manager for Texas, who is located in Illinois.  (Contreras Certif. ¶ 7; Email of June 5, 2009, attached to Contreras Certif. as Ex. B.)  Garcia's email signature included a New Jersey telephone number.  (Email of June 5, 2009.)  The ensuing negotiations for the scanners occurred only between Schaefer, who negotiated the purported contract on behalf of Control Screening from his office in Illinois, and Jorge Contreras and Maria Contreras, who negotiated on behalf of ITS from their offices in Texas.  Much of these negotiations took place via email, and PEMEX itself had no direct communications with Control Screening.  (Linares Certif. ¶ 15.)

Several additional communications between the parties are relevant to the instant motions.  Schaefer's initial letter to ITS, sent on June 17, 2009, included a quote and product literature.  (Contreras Certif. ¶ 8; Letter of June 17, 2009, attached to Contreras Certif. as Ex. C.)  The letter had no letterhead, suggested that Control Screening deliver the scanners from its Philippine factory directly to PEMEX in Mexico, and also noted that the critical parts for the

scanners were built in Fairfield, New Jersey.  (Contreras Certif. ¶¶ 8–9; Letter of June 17, 2009.)  The quotation attached to the letter listed the address of Control Screening's Midwest regional office in Hawthorn Woods, Illinois, and the product literature included Control Screening's Fairfield, New Jersey address.  (Letter of June 17, 2009.)

On August 21, 2009, ITS sent Control Screening several requests for quotation.  The requests set forth the payment terms as "net 30 days" and listed the seller as "AUTOCLEAR CONTROL SCREENING," with no address.  (Requests for Quotation, attached to Contreras Certif. as Ex. E; Contreras Certif. ¶ 17.)  Schaefer's letter in response, dated August 27, 2009, reiterated that the scanners would be shipped from the Philippines to Mexico, and that the critical parts would be manufactured in New Jersey.  (Contreras Certif. ¶ 18; Letter of Aug. 27, 2009, attached to Contreras Certif. as Ex. F.)  The letter included a footer listing Control Screening's Illinois address, and the quotation attached to the letter indicated that the term of payment was by letter of credit.  (Letter of Aug. 27, 2009.)

On October 27, 2009, ITS, on behalf of PEMEX, issued several purchase orders to Control Screening.  (Contreras Certif. ¶ 22.)  Each purchase order stated that the terms of payment were "net 20 days," that Texas law applied to the transaction, and that any disputes would be resolved via arbitration in Houston.  (*Id.* ¶¶ 22, 27–28; Purchase Orders, attached to Contreras Certif. as Ex. H.)  ITS delivered the purchase orders to Control Screening's Illinois address on November 2, 2009.  (Contreras Certif. ¶ 22.)

In addition to communicating with ITS's representatives in Texas, Schaefer communicated with other Control Screening employees about the negotiations with ITS.  On October 28, 2009, Schaefer forwarded an email containing ITS's commercial and bank references to Lou Tang, a Control Screening employee located in New Jersey.  (Emails of Oct.

5

28, 2009, attached to Talan Decl. as Ex. C.)  The email explained the issue with the payment terms, noting that the "real problem" was that Mexico could not issue a letter of credit.  (*Id.*).  On November 12, 2009, Schaefer sent another email to Tang, attaching the terms from ITS's purchase orders and stating that "[t]he sale is governed by the laws of the State of Texas."  (Email of Nov. 12, 2009, attached to Talan Decl. as Ex. B.)

## II. Procedural History

On June 2, 2010, Control Screening filed a second amended complaint terminating Petróleos Mexicanos as a party and adding PEMEX.  [D.E. 8.]  On October 8, 2010, ITS filed its motion to dismiss for lack of personal jurisdiction, improper venue, and on the basis of forum non conveniens.  [D.E. 22.]  In the alternative, it sought to transfer the case to the Southern District of Texas under 28 U.S.C. § 1404(a).  On November 22, 2010, as recounted more fully below, Judge Shwartz issued an opinion on the record granting ITS's motion to transfer the case to the Southern District of Texas, denying the motion to dismiss on the basis of forum non conveniens, and denying as moot the motions to dismiss for lack of personal jurisdiction and improper venue.  (Tr. 33:22–34:4.)  She filed an order to that effect the following day.  [D.E. 34.]

On December 7, 2010, Control Screening filed a motion seeking to vacate Judge Shwartz's order transferring the case.  [D.E. 36.]  While the appeal was pending, PEMEX moved to dismiss on the following grounds: insufficient process, insufficient service of process, lack of personal jurisdiction, improper venue, forum non conveniens, and lack of subject matter jurisdiction.  [D.E. 47.]  In the alternative, PEMEX seeks transfer to the Southern District of Texas pursuant to § 1404(a).

**III. When Transfer Is Appropriate**

Under 28 U.S.C. § 1404(a), "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." The purpose of the provision "is to prevent the waste of time, energy and money and to protect litigants, witnesses and the public against unnecessary inconvenience and expense." *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964) (internal quotation marks omitted).

When determining whether to transfer an action, the court must ask whether the proposed forum is one "where it might have been brought." *Solomon v. Cont'l Am. Life Ins. Co.*, 472 F.2d 1043, 1045 (3d Cir. 1973). In other words, the transferee district must be a proper venue for the action and the transferee court must have personal jurisdiction over all of the defendants. *Shutte v. Armco Steel Corp.*, 431 F.2d 22, 24 (3d Cir. 1970).

If the proposed forum is proper, the court then has broad discretion to determine whether transfer is appropriate. *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 883 (3d Cir. 1995). The inquiry should include a number of factors: (1) the plaintiff's choice of forum; (2) the defendant's choice of forum; (3) where the claim arose; (4) "the convenience of the parties as indicated by their relative physical and financial condition"; (5) the convenience of the witnesses for trial; (6) the location of books and records; (7) the enforceability of the judgment; (8) practical trial considerations; (9) the relative congestion of each court's caseload; (10) the local interest in deciding local controversies; (11) the public policies of the fora; and (12) the trial judge's familiarity with the applicable state law. *Id.* at 879–80. The first six factors reflect so-called private interests, while the latter six reflect public interests. *Id.* at 879. The court's task is to weigh these factors and determine whether a transfer would serve the goals of efficiency,

convenience, and cost saving. *White v. ABCO Eng'g Corp.*, 199 F.3d 140, 143–44 (3d Cir. 1999); *Van Dusen*, 376 U.S. at 616.

## IV. Control Screening's Appeal

### A. Judge Shwartz's Opinion

Judge Shwartz granted ITS's motion to transfer the case to the Southern District of Texas, denied the motion to dismiss on the basis of forum non conveniens, and dismissed as moot the motions to dismiss for lack of personal jurisdiction and improper venue. (Tr. 33:22–34:4.) Only the decision to transfer is at issue in this appeal.

After stating the standard for transfer, Judge Shwartz observed that the Southern District of Texas is a district where this case could have been otherwise brought. (*Id.* 23:4–7.) She cited 28 U.S.C. § 1391(b), which provides that

> A civil action wherein jurisdiction is not founded solely on diversity of citizenship may, except as otherwise provided by law, be brought only in (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which any defendant may be found, if there is no district in which the action may otherwise be brought.

Noting that jurisdiction in this case is not based solely upon diversity of citizenship (SAC ¶¶ 5–6), Judge Shwartz determined that "venue is appropriate in the Southern District of Texas because it is a judicial district where [a] substantial part of the events underlying the claim occurred." (Tr. 23:18–25.) Specifically, she found that the contract negotiations took place over email between Control Screening's representative in Illinois and ITS in Texas. (*Id.* 23:25–24:6.)

Judge Shwartz then analyzed the *Jumara* factors. First, she noted that while "a plaintiff's choice of venue should not be lightly disturbed" (*Id.* 25:7–10 (citing *Jumara*, 55 F.3d at 878–80)), such deference is unwarranted when the forum lacks contact with the transaction from

8

which the cause of action arises (*Id.* 25:11–15 (citations omitted)). She then determined that Control Screening's choice of forum was not determinative because New Jersey had very few contacts with the transaction. (*Id.* 26:2–10.) To the contrary, she found that ITS's choice of forum, Texas, had significantly greater connections to the transaction than did New Jersey. (*Id.* 26:4–6.)

Next, Judge Shwartz found that the third factor, the place where the claim arose, favors transfer because the contract "was negotiated, executed, and breached in Texas and was to be performed in New Jersey, the Philippines and Mexico." (*Id.* 26:15–18.) She again observed that the negotiations occurred via email between ITS in Texas and Control Screening in Illinois, and concluded that this conduct, rather than the manufacture and assembly of the scanners—which occurred in New Jersey and the Philippines, respectively—served as the basis of the action. (*Id.* 27:1–14.)

With regard to the fourth, fifth, and sixth factors—the convenience of the parties, the convenience of witnesses, and the location of books and records—Judge Shwartz observed that the ITS employees who negotiated the contract are based in Texas, their Control Screening counterpart is based in Illinois, and ITS's books and records are located in Texas. (*Id.* 27:15–28:5.) She also noted that Control Screening presented no certification supporting its contention that it will be inconvenienced by litigating in Texas and did not identify where its records or witnesses are located. (*Id.* 28:6–9.) In addition, she recognized that this Court lacks subpoena power over witnesses in Texas and Illinois. (*Id.* 29:3–4.) Therefore, she determined that the fourth, fifth, and sixth factors favor transfer. (*Id.* 29:9–11.)

Judge Shwartz then moved on to the public interest factors, finding that they, too, favor transfer. First, she determined that because ITS has neither a bank account nor any assets in

New Jersey, a judgment would be more easily enforced in Texas.  (*Id.* 29:12–19.)  Second, she found that pragmatic trial considerations—specifically, the location of witnesses—support transfer.  (*Id.* 30:4–8.)  Finally, she observed that the contract designates Texas law as the applicable law, and that the familiarity of Texas judges to Texas law favors transfer.  (*Id.* 30:9–13, 31:7–8.)

### B. Standard of Review

Pursuant to L. Civ. R. 72.1(c)(1)(A), "any party may appeal from a Magistrate Judge's determination of a non-dispositive matter," including a motion to transfer.  *See Siemens Fin. Servs., Inc. v. Open Advantage M.R.I. II L.P.*, 2008 WL 564707, at *2 (D.N.J. Feb. 29, 2008).  On appeal, a district court judge examines whether the magistrate judge's decision is "clearly erroneous or contrary to law."  L. Civ. R. 72.1(c)(1)(A); *Marks v. Struble*, 347 F. Supp. 2d 136, 149 (D.N.J. 2004) (Cooper, J.).  The party who filed the appeal bears the burden of establishing that the magistrate judge's decision is clearly erroneous or contrary to law.  *Travelers Indem. Co. v. Dammann & Co.*, 592 F. Supp. 2d 752, 758–59 (D.N.J. 2008) (Debevoise, J.).  "'A finding is clearly erroneous when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.'"  *Bobian v. CSA Czech Airlines*, 222 F. Supp. 2d 598, 601 (D.N.J. 2002) (Debevoise, J.) (quoting *Dome Petroleum Ltd. v. Emp'rs Mut. Liab. Ins. Co.*, 131 F.R.D. 63, 65 (D.N.J. 1990)).  "A ruling is contrary to law if the magistrate judge has misinterpreted or misapplied applicable law."  *Id.* (citing *Gunter v. Ridgewood Energy Corp.*, 32 F. Supp. 2d 162, 164 (D.N.J. 1998)).  Nevertheless, "a magistrate's legal conclusions on a non-dispositive motion will be reviewed de novo."  *Doe v. Hartford Life & Accident Ins. Co.*, 237 F.R.D. 545, 548 (D.N.J. 2006) (Linares, J.).  A district court judge reviewing a magistrate judge's conclusions of fact may not consider

evidence that was not before the magistrate judge. *Lithuanian Commerce Corp. Ltd. v. Sara Lee Hosiery*, 177 F.R.D. 205, 213 (D.N.J. 1997) (Orlofsky, J.).

### C. Whether Judge Shwartz's Decision Was Clearly Erroneous or Contrary to Law

On appeal, Control Screening does not take issue with the standard applied by Judge Shwartz. Nor does it explicitly state why it believes Judge Shwartz's opinion was clearly erroneous or contrary to law. Rather, it recapitulates certain of the arguments it made before Judge Shwartz and presents an alternate characterization of the facts, implicitly arguing that the record does not support the findings of fact made below. Notably, however, Control Screening's argument does not include a single citation to the record.

*1. Private Interest Factors*

In the context of the private interests relevant to the motion to transfer, Control Screening challenges Judge Shwartz's findings of fact with regard to the convenience of the witnesses and the location of books and records.

First, it asserts that ITS plans to call only two of its own employees as witnesses, and that the absence of these individuals during trial will not impact ITS's operations. It also asserts that Control Screening's own operations will be hampered by having much of its senior management, including its Chief Executive Officer, away from New Jersey for an extended period. These contentions are not supported by any facts in the record. Judge Shwartz found that the key witnesses at trial will be Schaefer, who negotiated the contract on behalf of Control Screening from his office in Illinois, and Jorge Contreras and Maria Contreras, who negotiated on behalf of ITS from their offices in Texas. (Tr. 27:16–28:2.) Control Screening's bare assertions to the contrary are insufficient to establish that this finding was clearly erroneous.

Second, Control Screening contends that neither party has identified any third-party witnesses, and that to the extent any third-party witnesses are required, New Jersey and Texas will be equally convenient for them. This argument, based on nothing more than conjecture about hypothetical witnesses, fails to establish that Judge Shwartz erred in finding that "the present record only indicates that pertinent witnesses and records are located in Texas and Illinois . . . ." (Tr. 29:9–10.)

Finally, Control Screening argues that its manufacturing, inventory, and purchase records are kept in its New Jersey office and will have to be brought to Texas for trial. It also contends that the documentary evidence ITS would need to transport to New Jersey will be minimal. Again, neither of these assertions is supported by the record. Indeed, Judge Shwartz observed that Control Screening did not provide a certification stating where its records or witnesses are located; on this basis, she found that the pertinent records are located in Texas and Illinois. (Tr. 28:6–9, 29:9–11.) On appeal, this Court can only consider evidence that was before the magistrate judge, *see Lithuanian Commerce Corp. Ltd.*, 177 F.R.D. at 213, and Control Screening has not pointed to any facts in the record that controvert this finding.

### 2. Public Interest Factors

With regard to the public interest factors, Control Screening contends that court congestion favors neither New Jersey nor Texas, that New Jersey has a stronger local interest in the outcome of the litigation than Texas does, and that Texas law does not apply.

Initially, the Court notes that Control Screening's argument with regard to court congestion is irrelevant. Judge Shwartz made no findings as to that factor, and Control Screening itself argues that court congestion neither supports nor countermands transfer.

Second, Control Screening argues that New Jersey has sufficient local interest in the outcome of the litigation to render transfer inappropriate. It contends that New Jersey has interests in ensuring that its corporations recover for breaches of contract and in requiring out-of-state corporations to honor the contracts they make with New Jersey companies. Therefore, Control Screening argues, there is a strong nexus between New Jersey and the facts of this case. Control Screening did not make this argument below and does not provide any support for its position on appeal. Furthermore, the argument Control Screening now makes ignores Texas's interests in the litigation, which correspond with New Jersey's interests. *See Cadapult Graphic Sys., Inc. v. Tektronix, Inc.*, 98 F. Supp. 2d 560, 568 (D.N.J. 2000) (Wolin, J.) ("Oregon has an interest in regulating the conduct of its corporations, while New Jersey has an interest in protecting its corporations."); *Lodge v. Mayline Co., LLC*, 2010 WL 4853642, at *9 (D.N.J. Nov. 9, 2010) (Debevoise, J.) (recognizing Illinois's interest in adjudicating a contract action involving an Illinois corporation). In fact, Control Screening recognized the interests of the state of Texas in its briefing before Judge Shwartz, where it argued that "both fora have ties to the facts at issue in this case." (Opp'n Br. to ITS Mot. to Transfer, at 15.) In addition, Judge Shwartz found as a matter of fact that New Jersey's ties to the transaction at issue were minimal, determining that the contract was "negotiated, executed, and breached in Texas and was to be performed in New Jersey, the Philippines, and Mexico," and that the litigation focused on the negotiations rather than the manufacture of the scanners. (Tr. 26:16–18, 27:5–13.) Control Screening does not point to any evidence in the record to the contrary, and therefore the Court cannot deem these findings erroneous or contrary to law.

Finally, Control Screening suggests that this lawsuit might be governed by either New Jersey or Texas law, and that because courts often apply the laws of states in which they do not

sit, choice of law does not favor transfer to the Southern District of Texas. Control Screening asserts that the provision in ITS's purchase orders requiring the application of Texas law is ineffective because Control Screening expressly rejected the inclusion of such a provision in the contract. (Opp'n Br. at 12–13.) It also argues that even if Texas law does apply, "[t]he burden is not on the plaintiff to prove that the proposed alternative forum is inadequate . . . ; rather, it is on the defendant to prove that its alternative forum is more convenient." (*Id.* at 13 (citation omitted).)

Control Screening does not point to any record evidence supporting its contention that it rejected the choice-of-law provision or disturbing Judge's Shwartz's finding that Control Screening acknowledged the applicability of Texas law. Rather, it asserts that "[t]he email cited by the Magistrate Judge was just a recitation that the purchase order contained a governing law provision." (Opp'n Br. at 13.) The email referenced—an internal Control Screening communication—states, "The sale is governed by the laws of the State of Texas." (Email of Nov. 12, 2009.) Control Screening does not cite to any evidence indicating that the email does not constitute an admission that Texas law applies, and therefore, this Court cannot find that Judge Shwartz erred in finding that it did.

Furthermore, while ITS did bear the burden of demonstrating to Judge Shwartz that transfer was appropriate, Control Screening bears the burden on appeal of demonstrating that Judge Shwartz's decision to grant the motion to transfer was clearly erroneous or contrary to law. *See Travelers Indem. Co.*, 592 F. Supp. 2d at 758–59. It has not done so. Therefore, Control Screening's motion to vacate Judge Shwartz's order transferring this action to the Southern District of Texas is denied.

**V. PEMEX-Petroquímica's Motion to Dismiss or Transfer**

Also before the Court is defendant PEMEX-Petroquímica's motion to dismiss Control Screening's complaint or, in the alternative, to transfer the action to the Southern District of Texas. Notably, a court need not possess personal jurisdiction over a defendant to transfer a case. *United States v. Berkowitz*, 328 F.2d 358 (3d Cir. 1964).

In its brief in support of transfer, PEMEX incorporates ITS's arguments. Likewise, Control Screening makes the same arguments in opposition to PEMEX's motion as it did with regard to ITS's motion. Indeed, the section of Control Screening's brief relevant to the PEMEX motion to transfer is essentially a verbatim reproduction of its brief in support of the appeal of Judge Shwartz's decision granting ITS's motion.

As suggested by the similarity of the briefing, the facts relevant to PEMEX's motion to transfer differ little from the facts underlying ITS's motion. The transaction is the same, with all of the same players. PEMEX is connected to the transaction only as the ultimate purchaser of the scanners. ITS served as its buying agent, and PEMEX never had direct discussions with Control Screening. The scanners were to be shipped to six PEMEX facilities in Mexico. While PEMEX is based in Mexico and was due to take delivery of the scanners there, the fact remains that the focus of this litigation is whether the negotiations between Control Screening's representative in Illinois and ITS's representatives in Texas resulted in a contract. Thus, as Judge Shwartz found with regard to the ITS motion to transfer, the transaction has little connection to New Jersey, and the pertinent witnesses and corporate records are located in Illinois and Texas. In addition, while the public interest factors are mostly neutral, the interests of justice weigh in favor of litigating the claims against ITS and PEMEX in the same forum. *White v. ABCO Eng'g Corp.*, 199 F.3d 140, 144 -145 (3d Cir. 1999) (holding that court should

15

weigh convenience of parties against inefficiency of trying claims in separate fora before severing and transferring claims against some defendants).

## VI. Conclusion

Based on the foregoing, transfer to the Southern District of Texas is appropriate, and Judge Shwartz's ruling to that effect is affirmed. Control Screening's motion to vacate the order transferring the action is denied, and PEMEX's motion to transfer is granted. PEMEX's motions to dismiss for insufficient process, insufficient service of process, lack of personal jurisdiction, improper venue, forum non conveniens, and lack of subject matter jurisdiction are denied as moot. An appropriate order will be entered.

August 3, 2011

/s/ Katharine S. Hayden
Katharine S. Hayden, U.S.D.J.